Judge Ceenshaw
delivered the opinion of the Court.
The evidence.satisfactorily shows that C. Barnet entered upon the premises in controversy under, and as tenant to Rutherford; that Rutherford sold and assigned the title bond, held by himself and Cornish upon Hudg-ins, to Cornish, who sold and assigned the bond to Cleaveland, the plaintiff; that Rutherford, after his assignment to Cornish, ceased to have anything more to do with the land; that Barnet rented from Cleaveland the second year after his entry under Rutherford; that Barnet, having determined to leave, made an agreement with E. Goodlet whereby Goodlet entered upon the premises and undertook to pay Cleaveland the rent, which Barnet had agreed to pay him. E. Goodlet then rented the premises from Cleaveland for the year 1845.
E. Goodlet remained upon the premises till about April, 1845, when he died, leaving his son, David Good-let, the defendant, on the land, with the balance of his family.
It is evident that, although E. Goodlet did not enter upon the premises under the plaintiff, Cleaveland, he entered under Barnet, who entered under Rutherford, under whom Cleaveland claims, and whose title Cleave-land held. And, when the defendant disclaimed Cleave-land as his landlord, Cleaveland had a right, without any .notice to quit, to maintain bis warrant of forcible entry and detainer, as soon as his own lease to E. Goodlet expired.
In the case of Helm vs Slader, (1 A. K. Marshall, 320,) it is decided that where a tenant obtains possession under one man, and then takes a lease from another, and *431 holds over, he is not liable to a warrant of forcible de-tainer by such lessor. But, in that case, Helm did not show that he was the holder of the title under which the tenant entered, or that he was connected with it in any way — -he appears to have been a mere stranger; and, upon this fact that decision is predicated. In the case under consideration, the defendant is shown to have entered under Barnet, who entered under Rutherford, under whom the plaintiff claims, and whose title the plaintiff holds. In Haynes vs Adams, (3 Marshall, 150,) it is decided that wherever the person in possession entered as tenant to the plaintiff, or those under whom the plaintiff claims, a writ of forcible detainer may be sustained for holding over.
A purohaser of the equitable title of a lessor can maintain forcible detainer against a tenant who holds over.
In the case of Sullivan vs Enders, (3 Dana, 66,) a purchaser under an executory contract from the lessor who appears to have the legal title to the land, was derived the right to maintain a warrant for forcible detainer against the tenant of his vendor, because, as we understand the opinion, it did not appear that the purchaser was entitled to the possession. The Court in that case say, “that the bond for a conveyance did not vest in the pui’chaser the legal right to the possession, or substitute him as landlord.” Here, the plain-tiffin the warrant is the holder of all the right and title of the original lessor, and has as much right to maintain 'his warrant for a forcible detainer as the original lessor would have, had he never parted'with his right. By the assignment of the title bond, Rutherford, the original lessor, parted with his entire interest. So much of what is said in 3 Dana, supra, as might seem to authorize the inference that the plaintiff in the warrant must have the legal title in order to succeed, we esteem as extrajudicial, and not at all necessary to be decided in that case. The plaintiff in the wan-ant in that case did not show himself entitled to the possession, and, of course, could not sustain his warrant. There is no doubt that Rutherford, who held only an equitable title, had he not parted with it, could have maintained his *432 ■warrant, and the vendee of his whole interest, has, in our opinion, an equal right to maintain his suit.
A tenant who denies the title of h¡3 landlord is not entitled to notice to quit before suit for the possession is brought.
After the agreement of E. Goodlet with Barnet to “ take Barnet’s contract with Cleaveland off his hands,” E. Goodlet rented the premises from Cleaveland for the year, 1845. Cleaveland, therefore, although he could not maintain his warrant for a forcible detainer, based upon his own lease to E. Goodlet, had no right to institute a warrant for forcible detainer, until his lease to E. Goodlet had expired. And the wurrant in this case was brought within two years from that time; so that he was not barred by the statute of limitations.
The possession of the defendant was of a distinct and separate part of the premises from that occupied by Mrs. Goodlet, and he, having disclaimed Cleaveland as his landlord, was subject to be turned out, notwithstanding his occupancy may have been under an agreement with his mother, that he should occupy the house in which he lived — she, herself, had no right, and could confer none upon her son.
The guardian ad litem, appointed by the Court, was no doubt appointed for David Goodlet, the defendant, although the record states that he was appointed for David Cleaveland. The guardian was appointed, as the record shows, to defend; and there are only two parties — John Cleaveland, plaintiff, and David Goodlet, defendant. It is clear, therefore, that the appointment was understood in the Court below to be for David Goodlet, the defendant, and, the fact that the appointment was not made until the trial had made some progress, should not, in our opinion, be regarded as erroneous. The guardian made no objection to the Court’s progressing with the trial, nor suggested any injury to the the defendant from anything that had transpired before his appointment; and we are satisfied that, as full justice was done to the defence, as if the appointment of the guardian had been made before the trial commenced.
Thurman and Alfred for plaintiff; Harlan for defendant.
The instruction of the Court to the jury is consistent with this opinion, and those asked by the defendant and refused, are inconsistent therewith.
Wherefore, the judgment is affirmed.